Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | JAMES B. ZAGEL | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 4382 | **DATE** | March 23, 2000 |
| **CASE TITLE** | Brian James Dugan v. Odie Washington, et al. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' motion to dismiss is granted in part and denied in part. Counts One, Two, Four, and Five are dismissed. Defendants are given 20 days to answer or otherwise plead to Count Three of the complaint. The clerk is directed to issue alias summons to Gilberto Romero, and the U.S. Marshal is directed to make all reasonable efforts to serve him. The Joliet Correctional Center is ordered to furnish the Marshal with Romero's last known address. The information shall be used only for purposes of effectuating service and any documentation of the address shall be retained only by the Marshal. Address information shall not be maintained in the court file nor disclosed by the Marshal.

(11) ■ [For further detail see attached order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 28 2000 | 37 |
| | Notified counsel by telephone. | | date docketed | |
| X | Docketing to mail notices. | | SB docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| CLH | courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Brian James Dugan, )
)
    Plaintiff, )
)
v. ) NO. 99 C 4382
)
Odie Washington, et al. ) HONORABLE JAMES B. ZAGEL
)
    Defendants. )

DOCKETED
MAR 28 2000

## MEMORANDUM OPINION AND ORDER

Brian James Dugan, currently an inmate at Joliet Correctional Center (JCC), brings this *pro se* complaint pursuant to 42 U.S.C. § 1983. Defendants Odie Washington, Leo Meyers, Michael O'Leary, Keith Cooper, LaMark Carter, James Randolph, Arthur Gillen, and Officer Shriber (hereinafter "defendants")[1] have filed a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

### I. Standard of Review on a Motion to Dismiss

Under Fed.R.Civ.P. 12(b)(6), a claim may be dismissed if, as a matter of law, "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (*quoting Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). "[A]llegations of the *pro se* complaint [are held] to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). Accordingly, "*pro se* complaints are to be liberally construed." *Wilson v. Civil*

---

[1] It appears that Gilberto Romero has not been served in this action because he transferred to the Graham Correctional Center. The court therefore has no personal jurisdiction over him at this time.

*Town of Clayton, Ind.*, 839 F.2d 375, 378 (7th Cir. 1988). When ruling on a motion to dismiss, the court assumes that well-pleaded allegations are true and draws all reasonable inferences in the light most favorable to the plaintiff. *Bethlehem Steel Corp. v. Bush*, 918 F.2d 1323, 1326 (7th Cir. 1990).

## II. Facts

Dugan alleges that he has been incarcerated in the Protective Custody Unit (PCU) of the JCC from 1990 until 1999 except for three psychiatric commitments to Illinois Department of Corrections (IDOC) psychiatric facilities comprising about 26 months. From December 1, 1993, through 1999, defendants undertook an extensive remodeling of the West Cell House at JCC, in which the PCU is located. During this work, toxic and hazardous substances containing lead or asbestos or friable asbestos or all three were removed, releasing these substances into the atmosphere of the West Cell House. Defendants did not supply Dugan with any equipment to protect him from the effects of these substances.

In Count One, Dugan alleges that defendants Meyers, Cooper, Shriber, and Romero began replacing the windows of the West Cell House in December 1993. After a window was removed a space was left open to the elements while work progressed and covered with a makeshift plywood barrier after working hours. As a result, interior cell temperature dropped below 32 degrees during the workdays and hovered around 50 degrees on weekends and holidays. Water froze in the sink and toilet and frost covered the floors, walls, and ceiling in his cell. Dugan claims that welders and gas torches used to remove the windows tainted the air with toxic and hazardous smoke and gases.

Dugan sent letters to the defendants but they did not respond or take any actions to relieve the conditions. Dugan covered the front of his cell with a see-through piece of plastic in a effort to keep the cold air, smoke, and gases from entering his cell, and he fashioned a breathing mask in order to filter out the smoke and gases. Defendant Romero ordered Dugan to remove the plastic and his breathing mask and told him that he would be placed in the disciplinary unit if he used these devices again. Dugan avers that defendants knew that implementing this window replacement project during the winter months would expose inmates to extreme cold and that the equipment used to remove the windows would release toxic smoke and gases. Dugan claims he suffered extreme cold temperatures, sinusitis, black, brown, and bloody mucus discharge, wheezing and hacking cough, frequent migraine headaches, sore throat, nausea and vomiting, partial loss of consciousness and dizziness. He attempted suicide, which resulted in his transfer to the Menard Psychiatric Center in January 1994.

In Count Two, Dugan claims that he returned to JCC in mid 1994. From about this time until late 1995 or early 1996, defendants Washington, Meyers, Cooper, Randolph, Gillen, Shriber, and Romero implemented the demolition, remodeling, and construction of the West Cell House quarter by quarter. As one quarter was completed, prisoners were moved into the remodeled section so that work could begin on the next section. Dugan claims he saw work crews in white hazardous material protective dress, equipped with breathing apparatus. One of the work crew told Dugan that he was removing hazardous substances, including asbestos.

Dugan wrote defendants and informed them that no effort had been made to cover vents and that dust and hazardous materials were blowing into the cells via these vents. Defendants Cooper and Romero implemented a policy of making it a rule violation if prisoners covered their

3

vents and ordered security officers to remove all materials used to cover the vents. Dugan claims that defendants Cooper, Romero, Randolph, Gillen, and Shriber frequently visited the West Cell House but ignored him when he attempted to bring the problem of asbestos and hazardous substances to their attention. Dugan also alleges that defendant Romero told him that if he did not stop complaining, Romero would arrange for another inmate, who had previously made an attempt on Dugan's life, to pay him a visit.

Dugan claims that investigators questioned him about alleged cannabis smuggling and use by PCU prisoners. Dugan refused to answer questions without being appointed counsel; so defendants Cooper and/or Romero had him assigned to the disciplinary unit and placed in a cell with a Latin King gang member, who was a known enemy of Dugan's. The inmate attempted to strangle Dugan. He was removed from the cell and asked to be returned to PCU. After conferring with defendants Romero and Cooper, the lieutenant on that shift said that he had been given orders to place Dugan back with the gang member, but would put him with a different inmate because of the assault. Dugan threatened to commit suicide if he was placed back with his enemies. Dugan was then taken to the hospital unit and placed in a strip cell for the next seven days under deplorable conditions.

In Count Three, Dugan states that on September 23, 1997, he was returned to JCC after treatment at the Menard and Dixon psychiatric facilities. In late 1997 or early 1998, defendants Washington, O'Leary, Cooper, Carter, Gillen, Randolph, Shriber, and Romero implemented work on another section of the West Cell House. Much of the work caused problems to those described in Counts One and Two. In addition, work crews ignited paint, varnishes, and other unidentified substances, which caused smoke and other gases to be released into the cell house.

4

Defendants ordered the exhaust fans to be operated continuously, and thick clouds of smoke and gases were pulled into PCU, forcing Dugan to breath air tainted with smoke and other gases. Defendants ignored Dugan's letters. In early 1998, defendant Romero disconnected a fan placed in front of Dugan's cell by the PCU sergeant, even though Romero could see smoke pouring into the unit. The PCU sergeant evacuated the cells on two successive days until Romero ordered him to place Dugan and the other PCU inmates back into their cells and not allow them out unless authorized by Romero.

From 1997 through 1998, defendants deferred maintenance on sections that were slated for renovation. As a result, sewer lines expelled untreated sewer gases into the PCU atmosphere. Rat and mice entered the PCU through open sewer lines and deposited droppings throughout the unit. Cell toilets went unrepaired and leaked feces and urine onto the cell floors; sinks failed to work properly; no cleaning supplies were issued to PCU inmates; and electrical hazards were not corrected.

Dugan avers that as a result of defendants' various actions, he was exposed to temperatures of between 45-50 degrees and exposed to toxic substances, asbestos, lead, dust, sewer gases, liquids containing feces and urine, vermin and roach infestations, electrical hazards, and was forced to live in scummy, filth-encrusted hovels. He alleges that he suffered shivering and sickness from the cold, sinusitis, cold and flu symptoms, migraine headaches, wheezing, hacking cough and brown and black discharge from his lungs, sore throat, nausea, vomiting, partial loss of consciousness, dizziness, and five electrical shocks.

In Count Four, Dugan alleges a conspiracy by two or more of the defendants to subject inmates to the above-described conditions, which violated his Eighth and Fourteenth amendment rights.

In Count Five Dugan claims a disability from late 1995 or early 1996 until September 23, 1997, because he was undergoing psychiatric treatment. He urges the court to toll the statute of limitations for those claims that occurred more than two years before he lodged this complaint.

## III. Analysis

Defendants argue first that acts occurring more than two years before the lodging of the complaint on June 29, 1999, are barred by the statute of limitations. The statute of limitations for § 1983 actions arising in Illinois is two years. *See Johnson v. Supreme Court of Illinois*, 165 F.3d 1140, 1141 (7th Cir.1999); *Farrell v. McDonough*, 966 F.2d 279, 280-82 (7th Cir. 1992); *Kalimara v. Illinois Department of Corrections*, 879 F.2d 276, 277 (7th Cir. 1989). Illinois no longer tolls the statute of limitations for inmates. *See Wilson v. Giesen*, 956 F.2d 738, 741 (7th Cir. 1992); *Knox v. Lane*, 726 F.Supp. 200, 201-02 (N.D. Ill. 1989).

Although state law governs the length of the statute of limitations, federal law governs the accrual date of the cause of action. *See Sellars v. Perry*, 80 F.3d 243, 245 (7th Cir. 1996). A claim generally accrues when the plaintiff knows or has reason to know of the injury. *See id.* Given that Dugan claims that he wrote letters to defendants almost immediately upon commencement of the work and tried to protect himself by putting up the plastic and the makeshift mask, he was aware in December 1993 that the renovation work might pose a risk to him. Absent tolling, because Dugan lodged his complaint on June 29, 1999, the statute of limitations has run on all of his claims based on events before June 29, 1997.

6

Dugan contends that the statute of limitations should be tolled because he was undergoing psychiatric treatment from late 1995 or early 1996 until September 23, 1997. Section 13-211 of the Illinois Code of Civil Procedure tolls the statute of limitations for minors and persons who are under a legal disability. The statute reads in pertinent part: "If the person is entitled to bring an action, specified in Sections 13-201 through 13-210 of this Act, at the time the cause of action accrued, is under the age of 18 years, or under legal disability . . . he or she may bring the action within 2 years after the . . . disability is removed." 735 ILCS 5/13-211 (West 1996). A person suffers from a "legal disability" when he or she is "entirely without understanding or capacity to make or communicate decisions regarding his person and totally unable to manage his [or her] estate or financial affairs." *Estate of Riha v. Christ Hospital*, 187 Ill.App.3d 752, 756, 135 Ill.Dec. 907, 544 N.E.2d 403 (1989). In a case where a legal disability is alleged, the record must contain sufficient allegations of fact from which one could conclude that the person seeking to be found legally disabled was incompetent or suffered from a serious mental disorder which made that person entirely without understanding or capacity to make or communicate decisions regarding his person and totally unable to manage his estate or financial affairs. *Sille v. McCann Construction Specialties Co.*, 265 Ill.App.3d 1051, 1055, 202 Ill.Dec. 808, 638 N.E.2d 676, 679 (1994). In a personal injury case, a person is not legally disabled if he or she can comprehend the nature of the injury and its implications. *Sille*, 265 Ill.App.3d at 1055, 202 Ill.Dec. 808, 638 N.E.2d 676.

By its very words, the statute states that a litigant must be under a legal disability at the time the cause of action accrues. Dugan himself claims a period of disability from late 1995 until September 23, 1997. Even assuming that Dugan's psychiatric treatment constituted a legal

7

disability, the events in Counts I and II accrued before he was under a legal disability. On that basis alone, his claim of a legal disability would not toll the statute of limitation. Moreover, Dugan has merely concluded that he suffered a substantial psychological impairment. The Illinois courts have uniformly held that a legal disability must be such that a person is entirely without understanding or capacity to make or communicate decisions regarding his person and totally unable to manage his estate or financial affairs. *See In re Doe*, 703 N.E.2d 413, 234 Ill.Dec. 552 (conclusory statements by claimant's therapist that claimant's autism left him without understanding or capacity to make or communicate personal decisions were insufficient to establish that claimant had a "legal disability," as would toll statute of limitations); *Hochbaum v. Casiano*, (patient was not "legally disabled" during her hospitalization following attempted suicide, so as to toll limitations period). The court accordingly finds that Dugan has not sufficiently pleaded facts constituting a legal disability that would toll the statute of limitations.

Dugan also avers that the statute of limitations should be tolled pursuant to the continuing violation doctrine. This doctrine permits a plaintiff to obtain relief for a time-barred act by linking it with acts that fall within the limitations period. However, it is applicable only if it would have been unreasonable to expect the plaintiff to sue before the statute ran on the conduct. *See, e.g., Filipovic v. K & R Express Systems, Inc.*, 176 F.3d 390, 397 (7th Cir. 1999). Because Dugan knew of the renovation work in December 1993 and has not proffered a reason why it would have been unreasonable for him to bring suit sometime during the following two years, the continuing violation doctrine does not apply.

Dugan next argues that the statute of limitations should be tolled because he was a member of the proposed class in *Sherman v. Lane*, 92 C 2192 (N.D. Ill.) and that class

certification in that action was not denied until March 6, 1998. Dugan is quite right that the "filing of a suit with a class allegation tolls the running of the statute of limitations with respect to absent class members ... [b]ut the time begins to run again if the district court refuses to certify the case as a class action." *Glidden v. Chromalloy American Corp.*, 808 F.2d 621, 627 (7th Cir. 1986), *citing American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974); *Susman v. Lincoln American Corp.*, 587 F.2d 866 (7th Cir. 1978), *cert. denied.*, 445 U.S. 942 (1980). However, Dugan is basing his argument on a case that was filed in 1992, dealing with conditions in 1992 and earlier, whereas his complaint deals with renovation work that did not begin until December 1993. He therefore cannot claim that the statute of limitations was tolled for him because of a case containing a class allegation that was filed in 1992.

The court accordingly finds that all alleged events that happened before June 29, 1997, are barred by the statute of limitations.

Defendants next argue that Dugan has not alleged that they had actual knowledge or involvement in the alleged violations stemming from the renovation of JCC. They contend that merely sending letters or copies of grievances is not enough to reach the necessary standard of knowledge and intent for a § 1983 claim.

An individual cannot be held liable in a § 1983 action unless he caused or participated in the alleged constitutional deprivation. *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986) (*citing Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)). Supervisors and others in authority also cannot be held liable for any alleged wrongdoing on the part of subordinates pursuant to the doctrine of respondeat superior because that doctrine does not apply in § 1983 actions. *See Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). However, an official

satisfies the personal responsibility requirement of § 1983 if he acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights or if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent. *Smith v. Rowe*, 761 F.2d 360 (7th Cir. 1985).

It is difficult to reconcile defendants' contention with the facts as alleged by Dugan, which the court must accept as true on a motion to dismiss. A huge renovation project, such as this one, could not have been undertaken without the knowledge and authorization of officials of the Illinois Department of Corrections. Although Dugan connects only defendant Romero with one specific incident, the removal of the fan, the court finds it premature to dismiss any of the defendants on the basis of lack of personal knowledge.

Defendants argue that Dugan has failed to state a cause of action for conspiracy. A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage. *Scherer v. Balkema*, 840 F.2d 437, 441-42 (7th Cir.1988). In order to establish a conspiracy claim under § 1983, "a plaintiff must allege '(1) an express or implied agreement among defendants to deprive a plaintiff of his or her constitutional rights, and (2) actual deprivation of those rights in the form of overt acts in furtherance of the agreement.'" *Tribblet v. Sanchez*, 1997 WL 106303, at *4 (N.D. Ill. Feb.12, 1997) (*quoting Selep v. City of Chicago*, 842 F.Supp. 1068, 1071 (N.D. Ill.1993)). Although a conspiracy may be demonstrated by circumstantial evidence, *House v. Belford*, 956 F.2d 711, 721 (7th Cir. 1992), "[m]ere conjecture that there has been a conspiracy is not enough to state a claim." *Kunik v. Racine County, Wis.*,

946 F.2d 1574, 1580 (7th Cir.1991). Instead, the allegations of conspiracy must be supported by factual allegations suggesting a "meeting of the minds." *Id.*

Dugan has failed to make any factual allegations to suggest a meeting of the minds. In his response at page 8 he states that "defendants conspired, pursuant to the construction plan, to violate plaintiffs [sic] civil rights...." Such a conclusory statement will not suffice to support a conspiracy theory.

Defendants next argue that they are entitled to qualified immunity. Qualified immunity shields state actors from damages resulting from liability for constitutional violations if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). However, it has long been held that deliberately subjecting an inmate to cruel and unusual conditions of confinement may violate the Eighth Amendment. *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991). Defendants are accordingly not entitled to qualified immunity.

## IV. Conclusion

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part. It is granted as to all alleged events that happened before June 29, 1997, because they are barred by the statute of limitations. It is granted in regard to Dugan's conspiracy claim. Counts One, Two, Four, and Five are accordingly dismissed. The motion to dismiss is denied as to defendants' argument that they lacked personal knowledge and involvement and that they are entitled to qualified immunity. Defendants are given 20 days to answer or otherwise plead to Count Three of the complaint.

The clerk is directed to issue alias summons to Gilberto Romero, and the U.S. Marshal is directed to make all reasonable efforts to serve him. The Joliet Correctional Center is ordered to furnish the Marshal with Romero's last known address. The information shall be used only for purposes of effectuating service and any documentation of the address shall be retained only by the Marshal. Address information shall not be maintained in the court file nor disclosed by the Marshal.

Enter:

James B. Zagel
United States District Judge

Date: 23 Mar 2000