# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | JAMES B. ZAGEL | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 4382 | **DATE** | MAY 3 1 2001 |
| **CASE TITLE** | Brian James Dugan v. Odie Washington, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' motion for summary judgment [55] is granted. The Clerk is directed to enter judgment in favor of defendants Odie Washington, Leo Meyers, Michael O'Leary, Keith Cooper, LaMark Carter, James Randolph, Arthur Gillen, and Officer Shriber and against plaintiff Brian Dugan pursuant to Fed.R.Civ.P. 56. Gilberto Romero is sua sponte dismissed from this action. This action is dismissed with prejudice in its entirety. Plaintiff's motion to supplement plaintiff's answer to defendants' summary judgment [73] is granted. Plaintiff's motion for entry of default by the clerk of the court [71], for default judgment and for civil contempt [72], to strike defendants' answer to the complaint, reconsideration, sanctions, civil contempt, and to consider evidence [74-1, -2, -3, -4, -5] are denied.

(11) ■ [For further detail see attached Memorandum Opinion and Order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUN 1 1 2001 date docketed | |
| X | Docketing to mail notices. | | | |
| X | Mail AO 450 form. | FILED FOR DOCKETING 01 JUN -7 PM 5: 04 | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| CLH | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Brian James Dugan, )
)
      Plaintiff, )
)
v. ) NO. 99 C 4382
)
Odie Washington, et al. ) HONORABLE JAMES B. ZAGEL
)
      Defendants. )

DOCKETED
JUN 1 1 2001

## MEMORANDUM OPINION AND ORDER

Brian James Dugan, currently an inmate at Stateville Correctional Center, brings this *pro se* complaint pursuant to 42 U.S.C. § 1983. On March 23, 2000, the court granted in part and denied in part defendants' motion to dismiss. The court dismissed Counts One, Two, Four, and Five. Count Three is accordingly the only remaining count in this action. Defendants Odie Washington, Leo Meyers, Michael O'Leary, Keith Cooper, LaMark Carter, James Randolph, Arthur Gillen, and Officer Shriber (hereinafter "defendants")[1] have filed a motion for summary

---

[1] Although the Clerk of Court issued alias summons to Gilberto Romero on March 28, 2000, he still has not been served. A judge may grant summary judgment in favor of all defendants even if only some defendants have moved for summary judgment. *Hunger v. Leininger*, 15 F.3d 664, 669 (7th Cir.) (citations omitted), *cert. denied*, 513 U.S. 839 (1994). A court may take this *sua sponte* action "where nonmoving defendants are in a position similar to that of moving defendants or where the claims against all the defendants are integrally related," *See Bonny v. The Society of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993), *Rosser v. Chrysler Corp.*, 864 F.2d 1299, 1304 (7th Cir. 1988). It is reasonable to extend the practice of dismissing defendants who have not joined in a motion when they are similarly situated to the moving defendants or where the claims against all the defendants are integrally related to unserved defendants to unserved defendants, as it would serve no purpose for a plaintiff to go through the motions of completing service in order to transform a dismissal without prejudice for failure to serve into a dismissal with prejudice for failure to state a claim. *See Mitchell v. Fairman*, No. 95 C 3648, 1996 WL 420294, *6 (N.D.Ill. Jul. 24, 1996) (Gettleman J.) Because the claims against Romero are integrally related to the claims against the moving defendants, he is dismissed from this action.

judgment pursuant to Fed. R. Civ. P. 56(c). In addition to his answer to the motion for summary judgment, Dugan has filed a number of other motions. For the following reasons, the court grants defendants' motion for summary judgment.

**I. Preliminary Motions**

On April 12, 2001, Dugan filed a motion for entry of default by Clerk of Court pursuant to Fed. R. Civ. P. 55. He avers that defendants did not file an answer as this court ordered in its March 23, 2000, order. The court has inspected the court's file and docket. The March 23 order was not entered on the docket until March 28. On April 19, 2000, defendants filed their answer to plaintiff's complaint. The answer also contains a "Certificate of Service" stating that a copy was placed in the mail on April 19, 2000. Contrary to Dugan's contention, an answer was filed in this action.

Dugan then asserts that defendants did not send him pages 11 and 13 of the deposition as ordered on March 12, 2001. Dugan previously made this argument in his motion in limine/sanctions, filed on April 6, 2001. The court denied that motion and sees no need to revisit the same argument. *See* Minute Order of 4/6/01. Dugan's motion for entry of default is accordingly denied.

On May 1, 2001, Dugan filed a motion for default judgment/motion for civil contempt. His arguments are similar to the ones he made in his motion to quash, filed January 2, 2001; motion to quash, filed March 8, 2001; and motion in limine/sanctions, filed April 6, 2001. The motion is denied for the same reasons that those motions were denied. *See* Minute Orders of 1/9/01, 3/12/01, and 4/6/01.

On May 16, 2001, Dugan filed a motion to supplement his answer to defendants' summary judgment. The court grants the motion and will consider this supplementation when ruling on the motion for summary judgment.

Finally, on May 16, 2001, Dugan filed a motion to strike defendants' answer to the complaint/reconsideration/sanctions/civil contempt; and to consider evidence. He claims that defendants filed their answer on April 19, 2001; however, although defendants' counsel certified that he placed it in the mail on April 19, 2001, the postmark clearly indicates that it was not placed in the mail until April 25, 2001. Dugan needs to examine the answer more closely. It is a copy of the answer that was filed on April 19, **2000**. Counsel obviously sent Dugan a copy of the answer in response to Dugan's motion for entry of default. This is not evidence, as Dugan contends, of contumacious conduct on the part of counsel. Dugan's motion is accordingly denied.

## II. Standard of Review on a Motion for Summary Judgment

*Borcky v. Maytag Corporation*, ___ F.3d ___, No. 00-2572, 2001 WL 467541, *3 (7th Cir. Apr. 26, 2001), details the criteria a district court must follow in ruling on a motion for summary judgment:

> [A district court] "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491-92 (7th Cir. 2000). Summary judgment is proper if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
> However, "[t]he mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment," *Liu v. T & H Mach., Inc.*, 191 F.3d 790, 796 (7th Cir. 1999); only a "genuine" issue of

"material" fact precludes summary judgment, Fed. R. Civ. P. 56(c). "Factual disputes are 'material' only when they 'might affect the outcome of the suit under the governing law.'" *Oest v. Illinois Dep't of Corrections*, 240 F.3d 605, 610 (7th Cir. 2001) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Furthermore, "[f]actual disputes are 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the [nonmovant].'" *Id.* (*quoting Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505). Speculation will not suffice. *See Liu*, 191 F.3d at 796 ("A party must present more than mere speculation or conjecture to defeat a summary judgment motion."); *Amadio v. Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001); *Gorbitz v. Corvilla, Inc.*, 196 F.3d 879, 882 (7th Cir. 1999) (stating that a plaintiff's speculation is "not a sufficient defense to a summary judgment motion").

Moreover, a party may not attempt to survive a motion for summary judgment through the submission of an affidavit that contradicts testimony in his deposition. *Amadio v. Ford Motor Co.*, 238 F.3d 919, 926 (7th Cir. 2001).

**III. Facts**

According to defendants' Local Rule 56.1(a)(3) statement of uncontested facts, the Joliet Correctional Center (JCC) began renovating the west cell house windows, including gallery 4 where Dugan was housed, in September 1997. (Schriever Affidavit.) A barrier was constructed between Dugan's cell and the renovated windows. (Plaintiff's Deposition at pp.12-13 and Schriever Affidavit.) During the renovation, the JCC had exhaust fans, barriers, and coverings for the windows that were being replaced. (*Id.* at pp. 12-13 and Schriever Affidavit.) Dugan was moved at certain times during the renovation to ensure his health and safety. (Plaintiff's Deposition at pp. 21-22.) Staff monitored the progress of the project and took complaints from inmates. (*Id.* at pp. 30-31 and Schriever Affidavit.) Dugan had no thermometer in his cell and has no direct measure of the temperature in his cell during the time of the alleged violation.

4

(Plaintiff's Deposition at p. 26.) Dugan had no direct knowledge of asbestos being removed from the facility during the time period covered by the complaint. (*Id.* at pp. 29-30.)

Dugan counters that work on renovating JCC actually began in December 1993 and was completed in early 1999. Dugan clarifies that only one exhaust fan was being used in the unit. (Plaintiff's Deposition at p. 22.). He contends that defendants' assertion that the staff monitored the progress of the project is a self-serving and misleading statement. Dugan disagrees that Romero was the only defendant with whom he discussed his complaints. (*Id.* at pp. 30-31.) Dugan disagrees that he has no direct knowledge of who has the authority to control the progress and direction of the construction. (*Id.* at p.18.) He avers that although he did not have a thermometer, frost formed on the walls, there was ice in the sink, and there was visible vapor from breathing. (Plaintiff's Affidavit at p. 4 and p. 8.)

## IV. Analysis

Defendants argue first that Dugan did not exhaust his administrative remedies before filing this action. Under 42 U.S.C. § 1997e(a), part of the Prison Litigation Reform Act (PLRA),[2] the court is directed to dismiss a suit brought with respect to prison conditions if the court determines that a plaintiff has failed to exhaust his administrative remedies. *Perez v. Wisconsin Dept. of*

---

[2] 42 U.S.C. § 1997e(a) provides:

No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

5

*Corrections*, 182 F.3d 532 (7th Cir. 1999). The exhaustion requirement was further explained in *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999):

> [I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim. The potential effectiveness of an administrative response bears no relationship to the statutory requirement that prisoners first attempt to obtain relief through administrative procedures.

IDOC's administrative grievance system is set out in the Illinois Administrative Code. Inmates must follow these procedures: (1) The inmate must first attempt to resolve the situation through his counselor; (2) If the situation remains unresolved, he may file a written grievance within six months of the incident or six months after the receipt of a decision concerning an informal resolution with the facility's grievance officer. Upon completion of an investigation by the grievance officer, the conclusions, and, if necessary, recommendations, are forwarded to the Chief Administrative Officer; (3) If the inmate does not believe the situation is resolved, he may appeal to the Director of the IDOC. The Administrative Review Board as the Director's designee reviews the appeal of the grievance and determines whether a hearing is necessary; (4) The Administrative Review Board forwards its decision and any recommendations to the Director or other designee, who makes a final determination. 20 Ill. Admin. Code § 504.810-850.

Dugan states that he filed two grievances. (Plaintiff's Deposition at pp. 5-7.) The Administrative Review Board responded to one of the grievances but not the other. (*Id.* at p. 7.) He claims he cannot produce copies of these grievances or the ARB's response because his packages of grievances and documents from JCC disappeared from his personal property when he was placed in segregation in December 1999. (*Id.* at p. 6.)

Defendants have proffered the affidavit of Sandra Kibby-Brown, the Coordinator of Inmate Issues for the Illinois Department of Corrections since July 1, 2000. She states that she made a thorough search of ARB records maintained by the office and located no grievances filed by Dugan in regard to conditions of confinement from September 1997 through September 1999 at Joliet Correctional Center, specifically concerning hazardous smoke and gases and extremely cold temperatures in the fourth gallery protective custody unit. (Kibby-Brown Aff. at ¶7.)

Dugan argues that because Ms. Kibby-Brown did not assume her current position until July 1, 2000, she does not have personal knowledge. This argument is specious. Because of her position, Ms. Kibby-Brown would obviously have access to and knowledge of the files maintained by the ARB.

More tenable is Dugan's argument that the ARB is required to keep records of grievances for only one year. 730 ILCS 5/3-8-8 (1997) provides in pertinent part:

> §3-8-8. Grievances. (a) The Director shall establish procedures to review the grievances of committed persons. ...
> (b) Such procedures shall provide that a record of such grievances and any decision made with respect to it shall be preserved for a period of one year.

By law, grievances need to be maintained for only one year. Nothing in the law mandates that the grievances be destroyed after one year, and it is possible that IDOC keeps these records for a longer period of time than the law requires. However, although it is implicit in Ms. Kibby-Brown's affidavit that she searched files from 1997 to 1999, there is nothing to verify that the ARB keeps files longer than the law mandates.

The court is accordingly unable to determine on this record whether Dugan exhausted his administrative remedies. The court therefore will consider the substance of Dugan's complaint in remaining count three.

7

In order to make out a claim for violation of his Eighth Amendment right to adequate conditions of confinement, Dugan is required to show two things. First, he needs to demonstrate that there was an objectively serious danger that posed a substantial risk of serious harm to his health or safety, that is, the conditions in his cell were "objectively, sufficiently serious." *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999) (*quoting Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "Extreme deprivations are required to make out a conditions-of-confinement claim." *Id.* (*quoting Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). *See also Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 529 (7th Cir. 2000). Second, Dugan needs to demonstrate that prison officials were deliberately indifferent to the risk, in other words that they knew of and disregarded the risk. *See id.* In order to show deliberate indifference on the part of defendants, Dugan must demonstrate that they knew of facts from which they could infer a substantial risk of serious harm, that indeed they drew the inference, and that they ignored the risk. *See Higgins v. Correctional Med. Serv. of Ill., Inc.*, 178 F.3d 508, 511 (7th Cir. 1999). Dugan needs to show recklessness on the part of defendants, not mere negligence or poor judgment. *See Tesch v. County of Green Lake*, 157 F.3d 465, 475-76 (7th Cir. 1998).

Dugan's first claim concerns the quality of the air in the cellhouse during the renovation. He claims that work crews ignited paint, varnishes, and other unidentified substances, which caused smoke and other gases to be released into the cell house, which he had to breathe. A careful examination of Dugan's deposition reveals a different story.[3] Dugan states that the west

---

[3] Dugan also submitted his own affidavit with his answer to the motion for summary judgment. The affidavit mainly repeats the allegations of his complaint and in many instances conflicts with his deposition testimony. More weight is generally given to depositions than affidavits. *See Darnell v. Target Stores*, 16 F.3d 174, 176 (7th Cir. 1994); *Bank Leumi Le-Israel v. Lee*, 928 F.2d 232, 237 (7th Cir. 1991); *Adelman-Tremblay v. Jewel Companies, Inc.*, 859 F.2d 517, 520 (7th Cir. 1988); *Babrocky v. Jewel Food*

8

cell house was split into quarters so that renovation could be done on one section at a time. (Plaintiff's Deposition at pp. 7-8.) Inmates were moved from 2 Gallery to 4 Gallery so that construction could be done on the part that was vacated. After that section was finished, they were moved into the remodeled part, and then construction began on the section which had been vacated. (*Id.* at p. 8.) Dugan admits that after the inmates were moved into the remodeled section, they did not have any more problems because the exhaust fans pulled the smoke out. (*Id.* at pp. 8-9.) Dugan claims that the problems arose while they were in the part of the Gallery that had not been renovated yet. However, he states that a barrier was put up between the cells in which the inmates were housed and the part of the Gallery that was being renovated. This barrier consisted of a steel plate with a door and was located about 24 feet from his cell, although it had a lot of cracks in it and was not air tight. (*Id.* at pp. 11-12.) Dugan states that an exhaust fan was located about five or six cells away from the barrier and was in use continually. (*Id.* at p.13.)

The affidavit of William Schriever, who has been the Chief Engineer of Joliet Correctional Center since February 1, 1995, states that from September 24, 1997, through October 3, 1997, construction of west cell house was in phase three, which consisted of renovation to cells 21 through 40 on Dugan's gallery. During this time, Dugan was housed in cells 12 and 13, and a construction barrier existed between cells 20 and 21. From October 3, 1997, through December 20, 1997, construction of west cell house was in phase four, which included renovation of cells one through 20. During this time, Dugan was housed in cell 23. The construction barrier

---

*Co.*, 773 F.2d 857, 861 (7th Cir. 1985). This is because depositions "carry an increased level of reliability," since they are "adversarial in nature and provide the opportunity for direct and cross-examination." *Darnell*, 16 F.3d at 176. A party "should not be allowed to create issues of credibility by contradicting his own earlier testimony." *Babrocky*, 773 F.2d at 861. In this instance also, the court will give more weight to Dugan's deposition rather than his unsupported affidavit.

9

remained between cells 20 and 21. In other words, after renovation was completed in cells 21 through 40, Dugan was moved to one of those cells and renovation then began on cells one through 20. At all times, a construction barrier separated the cells that were being renovated from the cells that were being occupied. Schriever went on to state that exhaust fans were located in two locations on the galleries and these fans blew air outside of the west cell house and did not recirculate the air within the unit.

Prisoners must be provided with adequate heat and ventilation. *See Del Raine v. Williford*, 32 F.3d 1024, 1035 (7th Cir. 1994). However, conditions such as poor ventilation do not fall below "the minimal civilized measure of life's necessities," absent medical or scientific proof that such conditions exposed a prisoner to diseases or respiratory problems that he would not otherwise have suffered. *Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997) (*quoting Farmer*, 511 U.S. at 833-34).

Dugan alleges that he suffered myriad symptoms--severe allergic reactions, sinus congestion and severe sinusitis, frequent migraine headaches, nasal discharges colored brown and black, violent coughing fits, sore throat, shortness of breath, nausea and frequent vomiting, dizziness and vertigo. However, when asked at the deposition whether he suffered any permanent physical symptoms related to his conditions, he replied "sinusitis." (Plaintiff's Deposition at p. 28.) He then added that he has suffered from hay fever since he was 15 years old and that he has been given medication for his sinusitis and hay fever. (*Id.* at p. 28.) Other than his own unsupported statements, Dugan has not come forward with any evidence, such as medical records, that the alleged exposure to tainted air during the renovation caused him any harm or caused his sinusitis.

Moreover, Dugan has not been able to demonstrate that any prison official treated him with deliberate indifference during this renovation. In his deposition, he describes how the Gallery was divided into sections, barriers were put up, at least one exhaust fan operated continuously. It is obvious that prison officials took precautions to try and keep the discharges created by the renovation work from reaching the inmates. This description is further supported by Schriever's affidavit, the engineer at Joliet. Dugan even admits that on several occasions, Sergeant McKinney moved the inmates to the other side of the Gallery when the smoke was bad. (Plaintiff's Deposition at p. 22.) Dugan avers that defendant Romero could have moved the inmates to the gym or recreation room when the smoke was bad. (*Id.* at pp. 19-20.)

Renovating the Joliet Correctional Center undoubtedly stirred up dust. Perhaps it would have been more pleasant for Dugan if prison officials had removed the inmates from the gallery completely, but "[i]nmates cannot expect the amenities, conveniences, and services of a good hotel." *See Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir.1988).

Dugan has not come forward with any evidence, other than his affidavit, which contradicts his deposition in many places, to demonstrate that the quality of the air during the renovation was an "objectively, sufficiently serious" condition. *Henderson*, 196 F.3d at 845. Moreover, in light of the construction barriers, exhaust fans, and movement of the inmates out of the cells that were being renovated, Dugan has failed to demonstrate that any defendant acted with deliberate indifference to his welfare.

Second, Dugan argues that because of deferred maintenance on sections that were slated for renovation, untreated sewer gases were released into the PCU atmosphere; rats and mice ran

11

rampant; toilets leaked feces and urine onto the cell floors; sinks failed to work properly; no cleaning supplies were issued to PCU inmates; and electrical hazards were not corrected.

In his deposition, Dugan states that he was never in a cell that did not have a functioning toilet or running cold water, although he did not always have hot water. (Plaintiff's Deposition at p. 23.) He also states that rats and mice were a big problem. (*Id.* at 23.) He states that he sustained electrical shocks when he had to twist the lightbulb into the brackets. He did not sustain any permanent injury. (*Id.* at 24.)

Although the conditions in his cell may have been unpleasant, Dugan has failed to attribute any injury to any of these conditions other than the electric shocks. As the Seventh Circuit has recognized, a tort, Constitutional or otherwise, cannot be maintained without an injury. *Niehus v. Liberio*, 973 F.2d 526, 532 (7th Cir. 1992). Moreover, 42 U.S.C. § 1997e(e) of the Prison Litigation Reform Act provides that prisoners may not bring civil actions for mental or emotional injury without a prior showing of physical injury. *See Zehner v. Trigg*, 133 F.3d 459, 461 (7th Cir. 1997).

As to receiving some electrical shocks, the Seventh Circuit has held that receiving shocks from exposed wiring is primarily an unpleasant inconvenience. *See Morissette v. Peters*, 45 F.3d 1119, 1123-24 (7th Cir. 1995). Dugan has accordingly been unable to demonstrate that the deferred maintenance rose to the level of an objectively serious condition.

Third, Dugan states that he was exposed to temperatures of between 45-50 degrees, resulting in shivering and sickness from the cold, sinusitis, and cold and flu symptoms. Prisoners must be provided with adequate heat. *See Del Raine v. Williford*, 32 F.3d 1024, 1035 (7th Cir. 1994); *Henderson v. DeRobertis*, 940 F.2d 1055, 1059 (7th Cir. 1991), *cert. denied*, 503

U.S. 966 (1992); *Lewis v. Lane*, 816 F.2d 1165, 1171 (7th Cir. 1987). In both the *Del Raine* and *Henderson* cases, the plaintiffs alleged exposure to extreme cold. Del Raine claimed that every several days he was stripped searched, placed in an empty cell without any clothing for 15 to 30 minutes, and that on one day the wind chill factor was 40 to 50 degrees below zero. Henderson averred that when the heating system malfunctioned during a period of sub-zero temperatures, inmates in segregation still were not allowed extra winter clothes and some were not given extra blankets. The alleged lack of heat in these cases stated hardships of constitutional magnitude because neither Del Raine nor Henderson received adequate protection from extreme cold.

Dugan states in his deposition that the area where the windows were removed was on the other side of the construction barrier and that plywood was put over the openings at night. (Plaintiff's Deposition at p. 21.) He claims that he started shivering when cold air came into his cell. (*Id.* at 27.) He also states that he had a blanket in his cell. (*Id.* at 27.)

Defendants obviously took precautions to keep the elements from the inmates. They erected the construction barrier and covered the exposed windows at night. Merely stating that it was cold is not enough, especially on a motion for summary judgment. Dugan needed to come forward with some indicia, other than his own statements, to show that he was indeed exposed on a regular basis to extreme cold and denied means to protect himself from the elements.

Fourth, Dugan avers that he was exposed to asbestos during the renovation. In his deposition, he states the he saw asbestos insulation on some pipes and that another prisoner informed him that he had sent out a sample, which was identified as asbestos. (Plaintiff's Deposition at p. 25.) In his affidavit, the Chief Engineer of JCC states that no asbestos was removed during 1997 through 1999 and that pipe chase asbestos had been removed in 1996.

(Schriever Aff. at ¶7.) The only evidence that Dugan has proffered that he was exposed to asbestos is his own affidavit. However, an affidavit must be based on personal knowledge, *see* Fed. R. Civ. P. 56, and Dugan has provided no authority other than hearsay for his contention that asbestos was being removed while he was confined in the west cellhouse. Even though asbestos was removed during 1996, Dugan was not at JCC during that time. He was transferred to JCC on September 23, 1997, after the asbestos was removed. Although he claims he saw asbestos on pipe insulation, asbestos released from building insulation is, in fact, invisible to the naked eye, and federal regulations call for laboratory analysis to separate asbestos from simple dirt. *See* 29 C.F.R. § 1910.1001 (App. A); *see also United States v. Midwest Suspension & Brake Co.*, 49 F.3d 1197, 1204 (6th Cir. 1995). In light of Schriever's statements that the asbestos was removed in 1996 before Dugan was returned to JCC and Dugan's lack of any evidence that he was exposed to asbestos, he has failed to demonstrate any exposure. Moreover, as noted in *McNeil v. Lane*, 16 F.3d 123, 125 (7th Cir. 1994), "asbestos abounds in many public buildings," and "[e]xposure to moderate levels of asbestos is a common fact of contemporary life and cannot, under contemporary standards, be considered cruel and unusual."

The court accordingly concludes that Dugan has failed to demonstrate that the renovation of the Joliet Correctional Center either objectively created conditions that violated the Eighth Amendment's prohibition against cruel and unusual punishment or that any prison official was deliberately indifferent to his welfare during this renovation. The court therefore does not need to address defendants' argument that none of the named officials were personally involved in any alleged deprivation of Dugan's constitutional rights.

## V. Conclusion

For the foregoing reasons, defendants' motion for summary judgment is granted on grounds that Dugan has failed to demonstrate that the conditions of his confinement rose to the level of a constitutional violation. The Clerk is directed to enter judgment in favor of defendants Odie Washington, Leo Meyers, Michael O'Leary, Keith Cooper, LaMark Carter, James Randolph, Arthur Gillen, and Officer Shriber and against plaintiff Brian Dugan pursuant to Fed. R. Civ. P. 56. Because the claims against Romero are integrally related to the claims against the moving defendants, he is also dismissed from this action. This action is dismissed with prejudice in its entirety. Dugan's motion to supplement plaintiff's answer to defendants' summary judgment is granted. Dugan's motion for entry of default by the clerk of the court, for default judgment and for civil contempt, to strike defendants' answer to the complaint, reconsideration, sanctions, civil contempt, and to consider evidence are denied.

If Dugan wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). If he does so, he will be liable for the $105 appellate filing fee. Unless he is granted leave to proceed *in forma pauperis*, he will have to pay the fee immediately. If he cannot do so, the appeal will be dismissed, but he will remain liable for the fee and it will be deducted from his inmate trust fund account in installments. *Newlin v. Helman*, 123 F.3d 429, 434 (7th Cir. 1997). If this court finds that the appeal is not taken in good faith, and the Court of Appeals agrees, he will not be permitted to proceed *in forma pauperis* and pay the fee in installments, but will have to pay the fee immediately or the appeal will be dismissed. 28 U.S.C. § 1915(a)(3); *Newlin*, 123 F.3d at 433-34. To avoid a finding that the appeal is not taken in good faith, a motion to proceed *in forma pauperis* on appeal should

explain the grounds for the appeal. *See Hyche v. Christensen*, 170 F.3d 769, 771 (7th Cir. 1999); *Newlin*, 123 F.3d at 433; Fed. R. App. P. 24(a)(1)(C).

Enter:

James B. Zagel
United States District Judge

Date: 31 May 2001